HENRY T. SMITH *vs.* SEBASTIAN D. LAWRENCE AND OTHERS.

By the shipping articles of a whaling voyage, the master and crew were to re-
ceive a certain proportion of the proceeds of the voyage, first deducting all
debts due from them, so soon after the return of the ship as the cargo could
be sold and the voyage made up; the articles being made subject to the cus-
tom of the port with regard to such voyages, which was, for the owners, on
the return of the ship, to ascertain the amount of the cargo, estimate its value,
deduct a percentage for commission and expenses, and pay the officers and
crew their shares immediately, if they chose to accept them; it being op-
tional with the officers and crew to do so, or to wait until after the sale of the
cargo and take their share of the proceeds of the sales. On the return of the
ship the owners ascertained and estimated the cargo, and paid the officers
and crew, excepting the master, according to the custom. The master after-
wards demanded of the owners payment of his share at the market value,
which was lower than the estimate made by them and upon which they had
settled with the others. The owners refused to pay him, claiming that he
was not entitled to payment until the cargo was sold. He then demanded
his share of the cargo itself, which was also refused. Upon a petition in
equity brought by the master against the owners for an account, and praying
that they be ordered to pay over to him his share in money, or deliver to him
his proportion of the cargo,—it was held, 1st. That the terms of the contract,
without reference to any custom, required the owners to dispose of the cargo
with no unnecessary delay and in a reasonable time. 2nd. That in ordinary
circumstances a delay of two months must be regarded as unreasonable, es-
pecially where made merely with a view to a rise in the market. 3d. That
the custom of the port was not introduced in evidence for the purpose of
aiding in the construction of the contract, as one of its implied terms, and
therefore inadmissible so far as it conflicted with the express terms of the con-
tract, but was expressly referred to in, and made a part of the contract, and

had therefore the same effect as any other express provision of the contract. 4th. That such custom was not repugnant to any provision of the contract, as it merely provided for a different mode, at the option of the petitioner, of giving him the benefit of his part of the cargo. 5th. That a demand upon the respondents was necessary before bringing suit. 6th. That the demand should properly have been for payment at the estimated value of the cargo, and not at its market value, but that the respondents, by refusing to make payment until the cargo was sold, had waived any defect in the form of the demand. 7th. That an objection, taken by the respondents after the hearing on the facts, that the petitioner had adequate remedy at law, would have been a valid one, if the case were one of which a court of equity could not, under any circumstances, have jurisdiction; but that, as it appeared by the terms of the contract, that a settlement of accounts might be necessary to an ascertainment whether and to what amount the respondents were in arrears to the petitioner, the objection could not be entertained at so late a stage of the proceedings.

PETITION in equity brought by the master of a ship against the owners.

The ship New England, commanded by the petitioner, left the port of New London in this state on a whaling voyage, in August, 1854, and returned to that port on the 30th of May, 1857, with a cargo of whale oil and bone taken during the voyage. The voyage was performed under a written contract between the owners, master, officers and crew, in the ordinary form of whalemen's shipping papers.

The covenants of the petitioner were all duly performed and no question arose concerning them. The portions of the contract in dispute were as follows : " And the owners of the ship New England hereby promise, upon the fulfillment of the above conditions, to pay the shares of the net proceeds of all that shall be obtained by the crew during said voyage, agreeably to the shares set against their respective names, as soon after the return of the voyage as the oil, or whatever else may be obtained, can be sold and the voyage made up by the owner or agent of said ship, first deducting all such sums as may be due from them to the owner or officers thereof, for advances, supplies or debts arising from any other consideration." * * * " And the parties further agree to be subject to the usages and custom of the port of New London in reference to this agreement."

The petitioner's share was to be one-fifteenth part of all

the bone and oil, and one dollar for each barrel of sperm oil taken and secured during the voyage.

Upon the return of the ship to New London, the cargo was discharged, weighed and gauged with all possible dispatch, and before the 15th of June. The value of the cargo was then estimated, the whale oil being valued at 70 cents per gallon, six per cent. deducted for guaranty, commissions and expenses, and the inferior officers and crew paid their shares forthwith, according to the general practice of the port. The petitioner not being paid, afterward, before the sale of the oil, which was the principal portion of the cargo, demanded of the owners payment of his share, not at the estimated price but at the market value of the cargo, less expenses, commissions and guaranty. This was refused because the cargo was not sold. He then demanded his share of the cargo itself, which was also refused. Nor were the owners ready and willing to pay him on the same basis that they had paid the other officers and crew.

On the 12th of August he brought his petition against the owners, praying for an account of the cargo, and for payment of his share of the value of the cargo, or a delivery of his proportion of the cargo itself.

The oil was considered worth 70 cents per gallon and could have been sold at a price between 65 and 70 cents, but the owners not deeming it their duty to sell it at a discount, it remained unsold. They had endeavored to sell it at 70 cents per gallon, but could not.

On the trial the petitioner claimed that by the shipping articles, and if not by them, by the custom of the port of New London, he was entitled to be paid his share in money, estimating the unsold oil at its market value, or to have the oil apportioned and his share allotted to him, so soon as the vessel was discharged and the cargo measured and weighed, which was on the 15th of June, and was not bound to wait until the oil was sold.

The respondents claimed that the petitioner must, by the shipping articles, wait until the oil was sold and the voyage made up,—that there was no custom of the port which could

vary the construction of the articles, and that they had used due diligence to sell the oil, but could not, except at a sacrifice which they were not obliged to make.

The petitioner then offered evidence of the custom of the port of New London in relation to the settlement of whaling voyages, which was objected to on the ground that the contract was explicit and unambiguous in its terms and could not be varied by any custom. The court admitted the evidence, and from it found that at the commencement of the whaling business at that port, shipping articles were substantially like those in this case, except that they contained no clause in relation to payment after the oil was sold,— that then the general practice was to apportion the oil and bone, and deliver to the captain and crew their shares specifically ; that shipping articles were afterwards changed by inserting a clause providing that the oil, &c., should be sold, the voyage made up, and payment made to them as in this case ;—that oil about the same time began to be sold on credit ;—and that because of these changes, the practice of apportioning the oil was discontinued, and a new practice, induced by the necessities of the mariners, the convenience of owners, and the giving of credit, grew up and obtained and for the last ten or fifteen years had been general and almost universal, to discharge and gauge the oil and weigh the bone, estimate the market value of the whole, deduct from five to seven per cent. according to circumstances for commission, expenses and guaranty, and pay the officers and crew forthwith on that basis. But it was optional with the officers and crew to accept such payment, or to wait till the cargo was sold and the voyage made up and then receive their shares of the actual proceeds.

Upon an examination of the accounts of the parties the court found due to the petitioner, if entitled to relief, the sum of $2,257.32.

The questions in the case, and particularly whether the evidence of custom was admissible to affect the contract of the parties, and to what relief, if any, the petitioner was entitled, were reserved for the advice of this court.

*Foster* and *Willey*, for the petitioner.

1. The shipping articles contemplated payment of the shares of the officers and crew as soon as a sale could have been made and the voyage made up with the exercise of due diligence. The finding of the court that the ship arrived May 30, that the voyage was made up June 15, and that the oil could have been sold forthwith at from 65 to 70 cents per gallon, is a finding that at the date of the petition more than reasonable time had elapsed for a sale of the oil and the payment of the petitioner under the express provisions of the contract. He is therefore entitled to relief by the express terms of the contract without reference to the custom. The shipping articles being drawn up by the respondents are to be construed more strongly against them. Decisions of courts of admiralty in similar cases will be followed by this court. *Brown* v. *Lull*, 2 Sumn., 443. *Harden* v. *Gordon*, 2 Mason, 546. Reference will be had in construing the contract to its subject matter and the character of the parties.

2. By the custom of the port the petitioner is entitled to his share in money. The custom is made a part of the contract by its express terms, and is binding on the parties as fully as if it had been recited in the contract. Parol evidence of it was admissible, not to vary or annul the contract, but to show the real agreement, and assist in its operation by acting in aid of the instrument and pointing out the precise objects to which it is applicable. *Williams* v. *Gillman*, 3 Greenl., 281. *Macy* v. *Whaling Ins. Co.*, 9 Met., 354. 1 Smith Lead. Cas., 583. The practice proved constitutes a custom, having all the requisites of one. It is general and nearly universal, of long standing, reasonable, has existed a sufficient length of time to have become generally known and to warrant a presumption that the contract was made in reference to it. *Barber* v. *Brace*, 3 Conn., 9.

3. A petition in equity is the proper remedy. 1st. There was an account to settle between the parties. 2nd. The shipping articles were in the hands of the respondents, and the petitioner could not bring his action on them. *Sturtevant* v. *Goode*, 5 Leigh, 83. 3rd. The remedy at law is inadequate to the

Smith *v.* Lawrence.

complete and prompt administration of justice between the parties. *Boyce* v. *Grundy*, 3 Pet., 210. But the objection to the jurisdiction comes too late after an answer and hearing, and should have been made by demurrer or plea in abatement. *Chipman* v. *City of Hartford*, 21 Conn., 499. *Hawley* v. *Cramer*, 4 Cow., 717. *Hamilton* v. *Cummings*, 1 Johns. Ch., 523.

*Lippett* and *Hovey*, for the respondents.

1. There was nothing due the petitioner until after the oil was sold and the voyage made up. 1st. The owners, officers and crew are not partners; the officers and crew have no property in the cargo. *Barney* v. *Coffin*, 3 Pick., 122. *Baxter* v. *Rodman*, id., 439. They are therefore not entitled to a division as joint owners. 2nd. The terms of the contract bind the owners to pay a percentage after a sale. There is not to be an apportionment of the cargo, and there has been none under similar articles. 3rd. The stipulation as to the custom of the port has reference only to matters not specifically provided for in the contract.

2. In selling the cargo the owners were obliged to use reasonable diligence and to act for the best interest of all parties. They could have a reasonable time in which to do it, and were not bound to sell at a sacrifice. The court finds that they have endeavored to sell at 70 cents per gallon and could not do so, but could have sold at from 65 to 70 cents. They were not bound to do this, and have not had reasonable time to sell at the estimated price.

3. Evidence of custom was imperfectly admitted, because the custom contradicted the plain terms of the contract, and established a method of payment at variance with that prescribed. It made a new contract for the parties and one which they did not contemplate.

4. But if admissible, neither the evidence adduced by the petitioner nor the finding of the court are sufficient to constitute a custom. A custom must be certain, reasonable, general, and compulsory on all parties. The finding shows a practice of the owners of making propositions for a compromise,—a practice of making settlements by a mutual

waiver of the terms of contracts of this kind, based on the mutual assent of the owners and crew ; at most it shows only a practice binding on one party and optional with the other.

5. If the custom is proved, and has become a part of the contract, the agreement is absolute to pay the money forthwith, and there has been a breach for which the petitioner has an adequate remedy at law. The bill should therefore be dismissed. *Wilkinson* v. *Frazier*, 4 Esp., 182.

STORRS, C. J. On the facts found in this case, we are of the opinion that, independently of those which relate to the custom which prevailed at New London in reference to the subject of the agreement between these parties, the plaintiff is entitled to relief. By the terms of that agreement, it was the duty of the defendants, on its fulfillment by the plaintiff, to pay to the latter his share, being the one-fifteenth part of the net proceeds of the oil and bone, and also one dollar on each barrel of sperm oil obtained during the voyage performed, as soon after its termination as it could be sold and the voyage made up by the defendants or their ships' agent, after first deducting the advancements and supplies which had been made to the plaintiff. We do not put so rigid a construction on that contract as to require the defendants, at all events, to dispose of the articles composing the cargo immediately on the return of the vessel. There might be, from temporary causes, an extraordinary and sudden depression in their market value, which would justify the defendants, who had an interest in the property in common with the plaintiffs, in conducting as prudent men would under those circumstances, and deferring a sale of them until those causes should cease to operate. But on the other hand, they would not be warranted in withholding the property from sale because they might believe, however reasonably, that it would rapidly rise in the market, or from any other motive of mere speculation. We can not lose sight of the fact that the proportion of the proceeds to which the officers and crew of the vessel were entitled under this contract, was to be received by them only as a compensation for their services

during the voyage, and that, considering their situation, they would naturally expect that those proceeds would be realized without any unnecessary or unusual delay; and it would be just that, unless the owners of the vessel could obtain their consent to wait, the property, at least so far as was necessary to satisfy the claims of the officers and crew, should be expeditiously disposed of for their benefit. And the nature of their occupation repels the idea that, in paying over to them their shares of the proceeds, it was understood that there was to be any unnecessary or considerable delay. The defendants were, in our opinion, bound to pay the officers and crew their shares of the proceeds of the cargo as soon after the return of the vessel as it could be sold and the voyage made up by the defendants, after the stipulated deductions, allowing them a reasonable and convenient opportunity for that purpose. The oil is found to have been an article which could readily be sold, and we can not doubt, although it is not found in terms, that such an opportunity had been afforded when this bill was brought. It is very obvious that, under ordinary circumstances, a sufficient time had elapsed to enable the defendants, without inconvenience, to sell and receive the proceeds of the oil, respecting which only, the question is made in this case; and no extraordinary or special reason is disclosed which would excuse them for a delay beyond that time, unless it is found in the circumstance that it could have been sold only for some price between sixty-five and seventy cents per gallon, at which latter sum it had been estimated by the defendants when it was discharged from the vessel and measured. We are unable to perceive on what ground, upon the facts presented to us, the defendants, as it respected the plaintiff, were at liberty in this case to wait for any particular rise in the market, or why they should not at least have disposed of sufficient to pay the plaintiff's claim on it. Upon the principle that the defendants were justified in holding on to the property for a rise in the market, they would have been accountable only for the plaintiff's proportion of the avails, as they might have been diminished if there had been a fall. We do not think that

they had any such implied, as it is conceded there was no such express, authority from the plaintiff. The reasonable time for disposing of the property is to be determined without any regard to the ordinary fluctuations of its price in market. Without considering, therefore, the custom which is found to have prevailed at New London in reference to agreements like that in question, we think that the plaintiff would be entitled to recover the value of what would have been, according to the contract, his share of what was obtained during the voyage, if the oil had been seasonably sold, and estimating it at its market value, after making the deductions therein provided for.

But this is not the true ground on which the decision of this case should be placed. We think that the evidence adduced by the plaintiff, to prove a custom and usage prevailing at the port of New London, when the agreement between these parties was made, respecting the subject of it, was admissible, and that the plaintiff is entitled to have his rights determined by it. It was one of the stipulations of that agreement that the parties should be subject to the usages and custom of that port in reference to the subject of that agreement. It is found that originally the shipping articles, for voyages like that in which the plaintiff was engaged, were substantially like that in this case, except that they did not contain any clause in relation to payment of the captain and crew after the oil was sold, and that then it was the general practice to apportion and deliver to them respectively their shares of the oil and bone specifically,—that the shipping articles were afterwards altered by inserting a clause providing that the oil should be sold and the voyage made up, and payment made to them as is provided in the agreement in the present case,—that about the time of such alteration oil began to be sold on credit, and in consequence of those changes the practice of apportioning the oil has been substantially discontinued, and a new practice, induced by the necessities of the mariners, the convenience of owners, and the giving of credit, grew up, and soon after that alteration, obtained, which became and between the last ten and

fifteen years has been general, to discharge and guage the oil, and weigh the bone, estimate their market value, deduct from five to seven per cent., according to circumstances, for commission, expenses and guaranty, and pay off the captain and crew forthwith upon that basis, in case the captain and crew chose to receive payment according to such estimate, in preference to waiting for the voyage to be made up after an actual sale of the cargo, and receiving payment for their services in money as expressed in the agreement, which it was optional with them to do.

The principal objection which is made as to the proof or effect of this custom, is, that it is variant from, and contradictory to, the clear terms of the written agreement between these parties in regard to the mode in which the plaintiff should be paid for his services. It is plain that, whether such a custom as is here shown could affect the agreement in this case if it constituted no part of the express contract between the parties, but was introduced, as usages usually are, for the purpose of expounding the agreement, a point which it is unnecessary to decide, the objection here made has no application to this case; because the custom here shown constitutes a part of the express contract between the parties as contained in the written agreement. It is expressly referred to in the stipulation which has been mentioned respecting it, and therefore it is to be deemed to be a part of that stipulation as much as if it were set forth in terms in the written agreement. And if we suppose that the custom is recited therein in terms, all difficulty on this point vanishes. It requires no authority to show that it might be made a part of that agreement as well by reference as by recital. Nor if the custom were described in terms in connection with that stipulation, would it be repugnant to, or inconsistent with, the rest of the contract. It is only a modification or qualification of the preceding stipulation in the contract, in regard to the mode in which the plaintiff should be paid for his services, and providing for a different mode, in the exercise by him of the option reserved to him on that subject,—an alternative promise to perform a

certain act, or, at the option of the promisee, another act,—or perhaps rather, to do the same thing in one mode or in another at the option of the promisee. Such a stipulation is quite common, and we see no possible objection to its validity. It appears that, upon the arrival of the vessel, the cargo was discharged and its contents ascertained with all convenient dispatch; that thereupon the oil was estimated by the defendants and a proper deduction made for expenses, commissions and guaranty; and that the inferior officers and crew were paid off and received their shares accordingly and in accordance with the general practice. Payment according to that practice being one of the terms of the agreement between these parties, the plaintiff was also entitled to receive his share upon the basis of that estimate. But it was necessary for him to make a demand thereof; and he relies on such a demand made of the managing owners of the vessel. That the demand was made of the proper persons there is no question; but the defendants except to the form of it as being for payment of his share at the market price and not at the estimate which had been made by the defendants. As the object of a demand would be to signify to the defendants the choice, on the part of the plaintiff, to receive his share according to the custom or usage at that port and not according to the mode expressed in the agreement, it would certainly seem as if it should be made explicitly and so as to leave no room for doubt in the minds of the defendants as to his intention in that respect; and there would be much reason for saying, if this point depended merely on the form of the demand made by the plaintiff, that it would have been sufficient for the defendants simply to refuse to comply with it. But it is found that on this demand the defendants declined settling with the plaintiff until the oil was sold, and did not offer to pay and were not ready and willing to pay upon the basis upon which the crew were paid, that is, according to the estimate, as the usage would require, but declined on the ground that the plaintiff was not legally entitled to payment until the oil was sold. We think that this reply amounted to a refusal by the

defendants to pay the plaintiff according to the usage, which rendered any further demand on his part unnecessary. After a refusal to pay him at all before the oil was sold, and a denial of his right to payment until that time, it was not for the defendants to require from him a different form of demand, to which, if the defendants were, as the plaintiff had a right to believe, serious, a refusal must again be returned. The result is, that the plaintiff is entitled to recover according to the computation presented by the superior court in its finding, with interest brought down to the time of the decree.

The defendants claim that this bill should be dismissed on the ground that the plaintiff has adequate and complete remedy at law. If this were a case where a court of equity had not jurisdiction, under any circumstances, to grant relief, we should be obliged to sustain this objection; but as it appears by the agreement between these parties in reference to the compensation to which the plaintiff was to be entitled for his services, that the ascertainment of the fact whether the defendants were in arrear to the plaintiff, and if so to what amount, involves a matter of account between them, which is a subject over which a court of equity has general jurisdiction, we think it was incumbent on the defendants to make this objection at an earlier stage of the case. They should not be allowed to do so after an answer has been filed to the merits of the bill, and the expense of a hearing has been incurred, and therefore the court should not dismiss the bill on this ground, but should retain the cause and proceed to grant relief. *Williams* v. *Niles & al.,* 24 Conn., 279.

In this opinion the other judges concurred.

Petition to be granted.